IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SELOMI MONGE VILLALTA,

    Plaintiff,

  v.

ERIC H. HOLDER, Jr., Attorney General;
JANET NAPOLITANO, Secretary of the
Department of Homeland Security;
DEPARTMENT OF HOMELAND SECURITY;
and U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

    Defendants.

No. C 11-03021 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND VACATING HEARING**

**INTRODUCTION**

In this breach-of-contract dispute, arising out of an immigration-related class-action settlement, defendants move to dismiss the action pursuant to FRCP 12(b)(6). For the reasons stated below, the motion is **GRANTED**.

**STATEMENT**

Plaintiff Selomi Monge Villalta, who is proceeding *pro se* and *in forma pauperis*, initiated this action against defendants for declaratory and injunctive relief. In June 2011, plaintiff filed a complaint alleging defendants had breached the stipulated class action settlement agreement approved in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) (Peckham, J.) ("ABC agreement"). Plaintiff alleges that defendants refused to give him

the rights and benefits of the ABC agreement, such as a new asylum interview and adjudication under new regulations, which resulted in denial of plaintiff's asylum and suspension of removal applications, and ultimately his removal to El Salvador (Compl. ¶ 1). Defendants contend that they recognized plaintiff's membership in the ABC class and have already afforded him all available relief pursuant to the ABC agreement, including administrative closure of his removal proceedings, grant of Temporary Protected Status ("TPS") and employment authorization, and a de novo asylum adjudication following a new interview (Br. 4).

### 1. THE ABC AGREEMENT.

The ABC agreement was a stipulated settlement of a class action raising "systemic challenges" to defendants' adjudication of asylum claims submitted by nationals of El Salvador and Guatemala. *Am. Baptist Churches*, 760 F. Supp. at 799. The ABC class was defined as all Salvadorans in the United States as of September 19, 1990, and all Guatemalans in the United States as of October 1, 1990. *Ibid.*

The ABC agreement entitled certain class members to "a de novo, unappealable asylum adjudication before an Asylum Officer, including a new interview, under the regulations in effect on October 1, 1990." *Ibid.* Class members entitled to a de novo adjudication included Salvadorans who applied for TPS or who indicated their intent in writing to the then-INS within the designated registration period. This included those who had been denied asylum, those whose asylum determinations were still pending, and those who had not yet applied for asylum. *Id.* at 799–800.

The ABC agreement established procedures for notice to class members and for the de novo adjudication, including stay of deportation and deferral of exclusion and deportation cases pending new adjudication, resumption of cases if asylum was denied, and restrictions on detaining class members eligible for relief. *Id.* at 800–07. This order summarizes the sections of particular relevance to plaintiff's claims.

Paragraph 11 indicated that the new interviews would be scheduled consistent with governmental resources. Paragraph 17 explained that class members could only be detained in certain situations (when convicted of a crime involving moral turpitude with a sentence

exceeding six months, or when the individual is a threat to national security or public safety), but that these special rules "shall not prevent the INS from detaining a class member after the Asylum Officer has issued a final decision. Such detention, if based on a likelihood of absconding, may only be based on events occurring after the Asylum Officer decision has been rendered." Paragraph 19(a)(1) provided for stay of deportation and deferral of exclusion and deportation cases pending new adjudication. Specifically, it required the administrative closing of cases pending before the Executive Office for Immigration Review ("EOIR"). Paragraph 20 allowed for the resumption of cases in the event the asylum application was ultimately denied. *Id.* at 803–07.

### 2. PLAINTIFF'S IMMIGRATION HISTORY.

Parts of plaintiff's immigration history are detailed in an exhibit to the complaint, which includes numerous documents such as copies of his asylum application, work authorization documents and handwritten notes from his EOIR proceedings. The Court has attempted to piece together the timeline of events, but some key facts are missing. The exhibit includes what appear to be explanatory pages written by plaintiff to indicate separate exhibits, but which also seem to allege additional claims, as discussed below (Compl. Exh. at 36, 54, 70). The following chronology of plaintiff's immigration proceedings is assembled from the complaint allegations and exhibits, to the extent that they were legible and comprehensible.

In October 1989, plaintiff submitted an application for asylum (*id.* at 19–20). The following month, the Office of Asylum Affairs issued an advisory opinion to the immigration judge, concluding that plaintiff had not established a valid claim of persecution upon return to El Salvador (*id.* at 18). In January 1991, the chief immigration judge issued an order administratively closing plaintiff's deportation proceedings pursuant to the ABC agreement, to allow plaintiff to apply for TPS (*id.* at 13).

Plaintiff applied for and was granted TPS in 1991 (*id.* at 25–27).[*] He also applied for and received employment authorization, in accordance with the ABC agreement, and his

---

[*] The exhibit does not include plaintiff's initial TPS application, but it contains his employment authorization (stamped "approved" in July 1991 and indicated his status as "TPS registrant") as well as an undated TPS annual renewal application. Defendants acknowledge that plaintiff was approved for TPS (Br. 1).

3

1  authorization was extended several times (the most recent document shows an expiration date
2  in April 1997) (*id.* at 14–16, 27, 37–39, 57). It appears plaintiff was assisted by counsel in
3  February 1997, and filed motions to consolidate and recalendar his request for suspension
4  of deportation in 1997 (*id.* at 43–49). He also alleges that he sought to change his status from
5  lawful temporary resident to lawful permanent resident at that time (Compl. ¶ 17). In November
6  2000, an immigration judge granted the government's motion to terminate deportation
7  proceedings (*id.* at 50–51).

8  Plaintiff submitted an application for "Suspension of Deportation or Special Rule
9  Cancellation of Removal" under Section 203 of the Nicaraguan Adjustment and Central
10 American Relief Act ("NACARA") in November 2004, but received notices that the application
11 was denied because plaintiff was subject to an outstanding final order of deportation or removal
12 (*id.* at 60–65). The record does not indicate that a final order was issued or reinstated between
13 the 2000 termination of proceedings and the 2004 denial. It is also unclear whether the
14 proceedings that resulted in the final order were initiated while plaintiff's asylum application
15 was pending, prior to the new asylum interview and adjudication under the ABC agreement.
16 If plaintiff seeks leave to amend, he should plead these facts with greater specificity.

17 Two years later, plaintiff had fingerprints taken for his still-pending asylum application
18 (*id.* at 66). The exhibit also contains a form entitled "Decision Regarding your Application
19 for Asylum," which included the statement: "You have just completed your interview with an
20 Asylum Officer," and provided instructions for returning on December 12, 2006, to receive the
21 decision (*id.* at 67). This form was signed by the officer but not by plaintiff. Plaintiff received
22 a "Final Denial" dated April 2, 2007, which stated that plaintiff was notified on December 12,
23 2006, of USCIS's intent to deny his application for asylum and withholding of removal, and had
24 been given thirty days to rebut the grounds for denial (*id.* at 68). Because he allegedly failed to
25 address or resolve the issues in the notice of intent to deny, the application for asylum and
26 withholding of removal was denied as of February 9, 2007 (*ibid.*).

27 Lastly, plaintiff has submitted records pertaining to his October 2007 detention, which
28 gave rise to the instant action. The Marin County District Attorney's disposition after plaintiff's

4

1  arrest by the San Rafael police indicated there was probable cause for arrest for DUI but no
2  complaint was filed due to insufficient evidence. Plaintiff alleges he was taken into custody by
3  ICE three days later and moved from the Marin county jail to the San Francisco EOIR building
4  (*id.* at 70). The Department of Homeland Security "Warning to Alien Ordered Removed or
5  Deported," was issued the same day and stated plaintiff was found "to have reentered the United
6  States illegally and have had the prior order reinstated under section 241(a)(5) of the Act" (*id.* at
7  71–73). The DHS warning did not provide details about the order or when it was reinstated.

### 3. PLAINTIFF'S CLAIMS.

Plaintiff's complaint alleges three claims against defendants, all arising in relation to the ABC agreement. *First*, the complaint alleges breach of contract for: (1) refusing to recognize his membership in the ABC class, (2) refusing his asylum application, (3) depriving him of an initial ABC asylum interview, (4) denying suspension of deportation application, (5) depriving him of his right to be free from detention, and (6) depriving him of his right to be free from reinstatement of a prior deportation order (Compl. ¶¶ 18–20). Several of the allegations in support of this claim are unclear in the pleadings, and as discussed below, this order concludes that the plaintiff may request leave to amend his complaint. *Second*, the complaint alleges a "Mandamus Act" claim for relief under 28 U.S.C. 1361, and seeks to compel USCIS to conduct the de novo determination in accordance with the ABC agreement (Compl. ¶¶ 22–23). *Third*, the complaint alleges "APA Claims" under 5 U.S.C. 702, 706, and seeks injunctive relief (Compl. ¶¶ 24–27).

Plaintiff seeks a "declaration that [he] established eligibility for entitlement to the rights and benefits of the ABC Agreement . . . and an injunction ordering compliance with the terms of the ABC Agreement" (Compl. ¶ 2).

## ANALYSIS

### 1. LEGAL STANDARD.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to

5

draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy* Co., 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted). *Pro se* complaints are held to less stringent standards than complaints drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Although the court is generally confined to consideration of the allegations in the pleadings, a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. FRCP 10(c). While there is a general obligation to accept the complaint's allegations as true, a court may reject conclusory allegations that are contradicted by documents referenced in or attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Our court of appeals has held that "a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims." *Ibid.* (citations omitted).

**2.    EXCLUSION OF MATTERS OUTSIDE THE PLEADINGS.**

If a FRCP 12(b)(6) motion to dismiss presents matters outside the pleadings and the court does not exclude them, the motion must be treated as a motion for summary judgment under FRCP 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. Plaintiff argues that defendants' exhibits A and B in support of the motion to dismiss are "incorrect" and should not be considered because they contain matters outside the pleadings (Reply to OSC 2–3; Opp. 2, Decl.). This order need not convert the motion to dismiss to a motion for summary judgment because the contents of the complaint and its appended exhibits are sufficient to show plaintiff fails to state a claim. *See Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 642 (9th Cir. 1989) ("[A] motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleadings happen to be filed with the court and not expressly rejected by the court . . . . The proper inquiry is

6

whether the court relied on the extraneous matter.") (citation omitted).  This order expressly excludes the evidence appended to Sarah S. Wilson's declaration in support of defendants' motion to dismiss (Exhs. A, B).

### 3. FAILURE TO STATE A CLAIM.

#### A. ABC and TPS Registration and Benefits.

Plaintiff argues that the "heart of the dispute is whether Plaintiff exercised his rights to timely register for benefits pursuant to the ABC agreement" (Compl. ¶ 3).  The exhibit to the complaint indicates that plaintiff did register for benefits and that TPS was granted, facts defendants do not dispute (Compl. Exh. at 47 (INS Record of Action noting "ABC class member"), 56 (showing status as "SPECIAL GROUP:  ABC"); Br. 1–2, 4).  This Court may disregard the conclusory allegation that defendants refused to recognize plaintiff's ABC status (Compl. ¶ 18), as it is contradicted by documents appended to the complaint.

#### B. De Novo Adjudication with New Asylum Interview.

Even construing the exhibit in the light most favorable to plaintiff, it shows that the new asylum interview occurred in 2006, followed by the new decision denying asylum in 2007 (Compl. Exh. at 67–68); therefore, plaintiff received the de novo adjudication he was entitled to under the ABC agreement.  Plaintiff does not allege that the documents he submitted are inaccurate or otherwise in dispute, and by including documents in the pleadings that establish he received a new interview and adjudication, he cannot contradict those facts with conclusory allegations in the complaint by claiming that he was denied the benefit of an interview (Compl. ¶ 19).  It is important to note that the ABC agreement did not entitle plaintiff to any particular outcome of the interview; it explicitly allowed resumption of proceedings if asylum were denied after the new interview.  *See Am. Baptist Churches*, 760 F. Supp. at 806–07.  The fact that plaintiff's asylum application was ultimately denied in 2007 is not grounds for a breach-of-contract claim.

#### C. Allegations regarding IIRIRA and EOIR Proceedings.

Nevertheless, plaintiff raises issues that merit attention and the opportunity to request leave to amend his pleadings.  He appears to argue that defendants' delay in granting him the

de novo interview caused him to be ineligible for the relief sought, because the asylum official who conducted his 2006 interview applied the newer Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") asylum regulations and not the ABC agreement regulations (Opp. at 2). These allegations are not sufficiently set forth in the operative complaint, and although plaintiff may seek leave to amend to allege new facts supporting the breach of contract claim, he may not add to the complaint through his briefings. The exhibit mentions IIRIRA in the context of EOIR proceedings in February 1997 but does not explain how it relates to the breach-of-contract claim (Compl. Exh. at 36). If plaintiff intends these and other allegations in the exhibit as separate claims, he must state them expressly in the amended complaint, should he seek leave to file one.

In addition, the ABC agreement did not require the defendants to complete the new interview within a specified time. Paragraph 11 indicated:

> The Defendants, consistent with governmental resources, reserve the right to control the scheduling of the interviews for all eligible class members not in detention. Non-detained class members who are provided an employment authorization document will not commence or maintain an action to compel a timely interview arising out of this agreement until July 1, 1994.

*Am. Baptist Churches*, 760 F. Supp. at 803. If an employment authorization request was not adjudicated within sixty days, the class member was entitled to immediate authorization, but there was no similar provision with regard to the new interviews. *Id.* at 805.

What the ABC agreement did require was for defendants to "stay or administratively close the EOIR proceedings . . . until the class member has had the opportunity to effectuate his or her rights under t[he] agreement." *See Am. Baptist Churches*, 760 F. Supp. at 805–06. The agreement permitted resumption of proceedings after a final denial of asylum, and did not "afford a right to further deportation or exclusion proceedings for those class members with a final order of deportation or exclusion, with the exception of any stays granted pursuant to paragraph 19" *id.* at 806–07. Plaintiff's proceedings were administratively closed in 1991 and terminated again in 2000 (Compl. Exh. at 13, 50–51), but it is unclear from the record whether proceedings were resumed, or when the outstanding order was issued or reinstated. If the EOIR initiated deportation or removal proceedings and issued or reinstated a final order while plaintiff

8

was still awaiting the new asylum interview and new adjudication of a pending asylum application (which eventually took place in 2006–2007), plaintiff would need to allege additional facts to support a claim for breach of the settlement agreement. Without sufficient facts, particularly regarding the outstanding order and events between 1997 and 2004, this order cannot and does not conclude plaintiff states a claim for breach of contract.

### D.     NACARA and Constitutional Allegations.

In his opposition brief, plaintiff also refers to a November 2004 call from USCIS and a "nonverbal conversation between asylum official and plaintiff" where plaintiff was "sent to: Laguna Niguel, Ca. to apply to 'Suspension of Deportation' or 'Special Rule Cancellation of Removal' pursuant to section 203 of NACARA, Form I-881" (Opp. at 2). It appears plaintiff is alleging the ABC eligibility checklist (Br. Exh. A) is false, for reasons related to a conversation encouraging plaintiff to apply for relief under NACARA. Because this order has excluded matters outside the pleadings, as discussed above, this order does not rely on Exhibit A.

To the extent plaintiff's claims allege injury related to the denial of relief under NACARA — the complaint mentions denial of "Suspension of deportation application" as an injury and includes the NACARA denial as an attachment — the NACARA adjudications are not part of the relief provided under the ABC agreement, and therefore, cannot support a claim for breach of the ABC agreement (*See* Compl. ¶ 19, Exh. at 64–65).

In addition, the exhibit to the complaint alleges constitutional violations:

> The USCIS induced to plaintiff class member into applying for Suspension of deportation and incur substantial filing fees, legal fees, and an expectation that my application for Suspension would be granted, [all of which gave rise to a "Property or Liberty interest"], the U.S. Constitution prohibited the deprivation of this "Property or liberty interest" (Equal protection component of the "Fifth Amendments" Due Process Clause).

(Compl. Exh. at 54) (alteration in original). Our court of appeals has held that there is no liberty or property interest in discretionary relief from deportation, therefore, plaintiff's constitutional due process rights were not violated by the denial of his application for suspension of deportation. *See Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) (holding plaintiff had no substantive due process right to remain in the United States). Plaintiff's equal protection

9

argument is not sufficiently detailed to evaluate, but our court of appeals has repeatedly held that various NACARA provisions do not violate equal protection. *See, e.g.*, *Hernandez-Mezquita v. Ashcroft*, 293 F.3d 1161, 1163 (9th Cir. 2002).

### E. Mandamus and APA Claims.

Because plaintiff fails to state a claim for breach of the ABC agreement, his claim for mandamus relief to compel the USCIS to adhere to the ABC agreement and conduct a de novo adjudication likewise fails. Similarly, plaintiff's APA claim also rests on the breach-of-contract claim; therefore, it fails as well.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED**. The hearing is **VACATED**. Plaintiff may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint in order to further develop his claims. A proposed amended complaint must be appended to the motion and plaintiff must plead his best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein. Plaintiff, who is proceeding *pro se*, is advised that information is available online at http://ccand.uscourts.gov/proselitigants and also in person at the legal help center. An appointment with the legal help center may be made by calling (415)782-9000, extension 8657.

**IT IS SO ORDERED.**

Dated: June 18, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE